JOHN FOLLARI, PLAINTIFF-APPELLANT, v. STATE OF NEW JERSEY, DEPARTMENT OF CIVIL SERVICE, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued September 9, 1968—Decided September 19, 1968.

Before Judges GAULKIN, COLLESTER and LABRECQUE.

*Mr. Frank J. Cuccio* argued the cause for plaintiff (*Messrs. Calissi, Gelman, Cuccio & Klinger,* attorneys).

*Mr. Theodore A. Winard,* Deputy Attorney General, argued the cause for defendant (*Mr. Arthur J. Sills,* Attorney General, attorney).

*Messrs. Chandless, Weller & Kramer,* appearing for the City of Garfield, filed a Statement in Lieu of Brief stating that the City joined in the brief and argument of plaintiff.

The opinion of the Court was delivered by
GAULKIN, S. J. A. D. This is an appeal from a decision of the Civil Service Commission placing the position of building inspector of the City of Garfield in the classified service, thereby making it subject to competitive examination.

Garfield is a city of the second class, organized under *R. S.* 40:107–1 *et seq.* (*Acts Saved from Repeal*). In 1959 Garfield adopted the provisions of the Civil Service Act. On

April 19, 1966 Garfield adopted the Standard Building Code of New Jersey by reference, *N. J. S. A.* 52:27C-54; *N. J. S. A.* 40:49-5.1. On April 4, 1967 Follari was appointed building inspector, effective June 1, 1967. The appointment was made by the mayor, and confirmed by the city council.

Civil Service approved the appointment as a temporary one in the competitive division, pending an open competitive examination. Follari and Garfield objected to the classification, claiming that the post belonged in the unclassified service, for which no examination is required, and that Follari was entitled to tenure under *R. S.* 40:171-168. Civil Service rejected these contentions and ordered the examination. Follari took the examination but, upon his motion, we enjoined Civil Service from certifying the results pending the outcome of this appeal.

Follari and Garfield (hereafter appellants) claim that Garfield's building inspector is in the unclassified service as head of a department, *N. J. S. A.* 11:22-2(*d*), or as an "appointment of the mayor," *N. J. S. A.* 11:22-2(*c*). We disagree and affirm the decision of Civil Service.

█ Follari is the only employee in the alleged "department." However, appellants point to section *B*-103.0 of the Standard Building Code which provides that "the building official shall appoint such number of officers, technical assistants, inspectors and other employees as shall be necessary for the administration of this code and as authorized by the appointing authority." Appellants argue that this establishes the building inspector's right to hire and exercise control over subordinates, even though (as appellants admit) it does not give him the right to discharge them. Consequently, say appellants, the position of the building inspector substantially meets the test allegedly laid down in *Milton v. Dept. of Civil Service,* 71 *N. J. Super.* 135 (*App. Div.* 1961), for determining whether one is the head of a department.

To begin with, in *Milton* we did not lay down a definitive test. We merely said that "A review of the decisions shows

that the following factors have been considered as indicating whether or not a position is that of head of a department * * *." (at *p.* 140). Each case must still be considered upon its own facts and merely because those facts do or do not literally comport with the factors mentioned in *Milton* will not automatically answer the question whether a position is that of head of a department.

Beyond that, this case does not exhibit the factors mentioned in *Milton*. The mere fact that the Standard Building Code gives the building inspector the right to appoint such subordinates as the municipality might authorize is immaterial, for here the municipality authorized none. It must be remembered that the Standard Building Code is a form designed to be available for use by all New Jersey municipalities, large and small. Therefore the mere adoption of its general words provides no basis for evaluation of a position unless and until the words are implemented by action of the municipality. Here Garfield has not authorized the appointment of any subordinate to the building inspector, and there are no employees of any kind in his alleged "department" other than himself. In *Milton* the officer in question had 55 subordinates under him. In addition, he had the right to fire as well as to hire employees, which Garfield's building inspector does not have.

Appellants argue that Follari would not be "a subordinate of another officer of the municipality," which was also one of the factors mentioned in Milton. However, standing alone that is of little importance. In small communities there rarely are members of the governing body or other officers with the training which would enable them to supervise the technical details of the work of building, plumbing, health and similar inspectors. This does not make them heads of departments. *Cf. Mara v. Parsippany-Troy Hills Twp.*, 24 *N. J.* 113, 119 (1957). On the other hand, building inspectors in all municipalities, large and small, must keep records and report to the appointing authority as to their activities and account for fees collected. Under the Standard

Building Code, the Garfield building inspector must do likewise. Sections $B$–113.6, $B$–113.6($a$), $B$–113.6(b). Similarly, here it is of little moment that the work of the building inspector is important (the work of all building inspectors is important) or that he is provided with an office in the main building.

It is true that Follari was appointed by the mayor with the consent of the council, as the city's ordinance (not the Standard Building Code) provides. *However, R. S.* 40:171–55 provides that "in all cities of this state" the "board of aldermen or common council" shall have the right to appoint a building inspector. We know of no statute which gives that right to a mayor. *N. J. S. A.* 40:171–168 speaks of building inspectors, at least in second-class cities, as being "appointed or elected by municipal boards."

■■ It is true that Garfield's ordinance gives the appointing power to the mayor, subject to approval by the council, and the council did approve, but the council had no right to cede its appointing power to the mayor. The exemption from the classified-competitive service granted by the Civil Service Act, *N. J. S. A.* 11:22–2($c$), extends only to appointments which a mayor has the right to make. Here the mayor had no such right.

■ We must also note that, even if Garfield's building inspector were in the unclassified service and the Civil Service Act did not apply, Follari was not legally appointed. The Standard Building Code fixes the qualification of the "building official" (§$B$–105.0) and provides that at least ten days prior to his appointment "other than by civil service, the appointing authority shall formally submit [his] qualifications to the State Board of Standards for its review and approval" § $B$–105.1. It is admitted that this was not done. Therefore it may be that Follari has no standing to prosecute this appeal. Even so, we elected to decide the basic question because of its general public importance.

Affirmed.